The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oh yay, oh yay, oh yay. All persons having the amount of form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, have marched to dry night and give their attention. For the Court is now sitting. God save the United States and this Honorable Court. Good morning and welcome to this internet session of the Fourth Circuit. We appreciate everyone's patience while we work through these unusual circumstances. I'm Judge Agee and I'm joined on the panel by Judge Thacker in Charleston and Judge Rushing in Asheville. And we're going to begin hearing argument in our case today, which is the, there are two cases involving the Vaping Association and the Cigar Association. And I want to thank counsel for their suggestions with respect to how to order the argument. So we're going to follow that suggestion with arguments for Mr. Gotting and Mr. Rathman initially, followed by arguments for Mr. Rivez, which I may have mispronounced, and Mr. Dubner. With rebuttal time for the first three counsel. We would ask that counsel begin by addressing with respect to the vapor appellants, the mootness question and with respect to the Cigar Association, whether or not the denial of the motion to intervene was an abuse of discretion. So with that, I'll also note that the court will be asking questions. The judges may be raising their hands, so if you see a hand go up, if you would stop talking until after you've heard the judge's question and respond. So this is an important case. It has some very complicated issues. So we may add a little extra time here and there, but we're also not going to be here all day. So with that, Mr. Gotting, if you would start your argument. May it please the court, I'd like to reserve two minutes for rebuttal. I'm Mr. Eric Gotting and I represent the vapor appellants. And thank you for holding this hearing today. As to mootness, FDA and the plaintiffs face a high bar. They have to show that it is literally impossible for this court to provide any relief. And in particular, when an agency tries to moot a case by repeating the alleged unlawful conduct, the conduct that is being challenged on appeal, there is no mootness. And that's what happened here. We are arguing on appeal that the district court should have remanded the 2017 guidance back to FDA for formal APA notice and comment rulemaking. Counsel, I have a question here. Yes. I wanted to ask you, in view of the FDA's adoption of the 2020 guidance, exactly what relief could the court be giving you with respect to the 2017 enforcement guidance? Because as I understand it, there has been no challenge filed to the 2020 enforcement guidance. That's correct, Your Honor. We submitted, or we cited two cases in particular, the Northeastern and the Green case, where the, let's call it the old ordinances, were actually replaced. They were repealed or amended. And because those amendments, because the new version of those did not address the unlawful conduct or the alleged unlawful conduct on appeal, the original case could proceed. And that is what has happened here. So you have a 2020 guidance, which was issued, and no one disputes this, without any formal notice and comment rulemaking, meaning 553 APA. And that is our challenge on appeal. We are saying that because the merits decision in Judge Grimm held that any across-the-board or categorical deadline must have or must go through formal notice and comment rulemaking, that that 2017 guidance should have been remanded and enforce new rulemaking. And so this court can remand or ask for order Judge Grimm to remand the 2017 guidance. I'm sorry, counsel, I have a question. But wasn't there, weren't there a number of comments on the 2020 guidance? Comments were submitted, but it was through informal notice and comment, which would be different than 553 formal notice and comment rulemaking. But counsel, if there's no current challenge before the court with regard to the 2020 guidance, I'm still not quite understanding what relief you can get on the 2017 guidance. I mean, what effectiveness does it still have in view of the fact the FDA has now adopted the 2020 guidance? Ultimately, FDA, our position is FDA, if it wants to set a new PMTA deadline, it has to go through formal notice and comment. So this court can order Judge Grimm to remand back for that type of rulemaking. As a practical matter. So what are we remanding back, the 2017 or the 2020? The 2020 guidance, all this court needs to do is ask, was the alleged unlawful conduct corrected by the 2020 guidance? And our position is that it is no. And therefore. I have a question on that. Even accepting that doctrine, it's not as though it's an ordinance that has the same provision. So the same unlawful conduct is continuing. It's that they had a new guidance that went through new procedures, which seems like a, if it's a problem, a new problem that has to be challenged in a new lawsuit. I think it's different than the examples you're giving, isn't it? No, the actually the case in the Northeastern, the Supreme Court in the Northeastern case and this court in green face the same exact scenario where a new procedure, a new ordinance was adopted. Or the old ordinance was amended. So it's literally. Was the challenge though to the procedures by which the new ordinance was adopted? Or was it a challenge to the substance of the ordinance? And those would be the substance. But I don't see anything in those cases that it would it would make a difference. The relief you can provide is to have FDA if they want to set a new date to go through formal notice and comment rulemaking. And they did not do that in the 2020. I have a question. Didn't give us. Yes. I have a question. I'm sorry. Can you go back to Judge Agee's question, which was what are we remanding back? The 2017 guidance or the 2020 guidance? I'm not sure you're not. You're not. You're you're remanding the issue back to FDA. Judge Grimm vacated the the 2017 guidance. But you're remanding back for further proceedings consistent with the opinion, the merits opinion. So as though the 2020 guidance never happened. Yes. And that's what Northeastern in the green case say that you proceed with the original case. So in that circumstance, what what relief do you get? I mean, the 2020 guidance is there. The FDA says it's going to follow that. It's never been challenged. I'm still not quite understanding what relief you get by other than intellectually. Right. If the 2017 guidance will remain. So if this court upholds the merits decision and applies it and says, yes, you have to do a to do a new date. You have to do a formal notice and comment as a practical matter. The 2020 guidance would be unlawful. You wouldn't have to make that ruling. But as a practical matter, it would be because it didn't go through formal notice and comment rulemaking. And I think it's as simple as that. So if we were to disagree with you and find that as far as your clients, the case was moot. Would there be any reason for us to look at the merits of the case as far as your clients are concerned? I think the answer would be no. All right. Is there anything else that you want to tell us about the mootness issue? I think that is it. Except maybe just the point that both Northeastern and Green also hold that the attempted mootness can be different. It doesn't need to be exactly the same. As long as it doesn't solve the original problem, the problem that's on appeal. There is no mootness. And the original case proceeds. Is there anything about the merits of the case that you want to address at this point? Just briefly, just to reiterate what our position is, is that Judge Grimm held in the merits decision that a categorical deadline is something that needs to go through formal notice and comment rulemaking. And our position is that he therefore did not have authority, where he also held that FDA has discretion on remand to do a new rulemaking. But according to APA 553, he had no authority to set his own deadline, particularly where this deadline is just not a simple deadline that some of these cases talked about, like ruling on a Social Security filing. This decision entails complicated issues of science, technical issues, administrative issues, and policy issues. And we shouldn't have judges making those decisions. They should go through formal notice and comment so that our stakeholder interests, we know they've been considered, we know FDA has an obligation to address them and write about them and explain its decision. And ultimately, if we disagree, it's subject to judicial review. So I think I'll reserve my time for rebuttal unless you have any questions. Unless the panel has questions. I think you've used your time, but we have the discretion to kind of move the time. So I'm inclined to still give you three minutes on rebuttal. Thank you, Your Honor. I appreciate it. Thank you very much, Mr. Raffman. We'll be glad to hear from you. Thank you, Your Honor. May it please the Court, Mark Raffman for the CIGAR appellants. I want to focus first on intervention. Mr. Raffman, Mr. Raffman, if you could move just a little to your left. You're only halfway in the sketch. That's better. All right. Thank you. I'd rather be all the way in. I'm going to focus on intervention first, and then I want to focus on the impact of the January 2020 guidance as far as the merits are concerned. With respect to intervention, the District Court committed legal error when it denied CIGAR appellants' intervention motion as untimely without ever asking whether the motion was filed within a reasonable time after the government had ceased to adequately represent CIGAR appellants' interests. The cases are unanimous that that is the legal standard that the Court was bound to apply. The chronology shows that CIGAR appellants intervened shortly after events first suggested that the government might cease adequately representing their interests. Before the merits order in May of 2019, the government was vigorously defending the 2017 guidance. And indeed, as the plaintiffs have pointed out at 29 of their brief, we sought to file an amicus brief in 2018, noting that we are not moving to intervene because the government was representing our interests and pursuing the same ultimate objective. After the May 15th merits opinion, other industry participants sought to intervene, and the Court denied that motion because it found, among other things, that FDA was adequately protecting their interests. That's Appendix 101 to 104. So we had no opportunity to intervene as of May 2019. We sought to intervene at the first sign that the government might not appeal, that it might not adequately represent our interests. That was after the remedial order, when the government filed a motion to clarify rather than immediately appealing that order. We contacted the government about an appeal. The government did not file an appeal as the time was running. We filed our intervention motion on September the 4th, which is well before the time to appeal had run. That was the time when we should file that motion. If you compare our intervention with the VAPE Association's motion, you'll see there's no functional difference between them. The VAPE Association's filed a motion to intervene on August the 9th. We filed ours on September 4th. Absolutely nothing happened in the case in those intervening few weeks that would make their motion timely and ours not. The District Court found the VAPE Association's could not, as a practical matter, successfully intervene earlier, and that their motion would not have been granted before the remedial order issued. That's at 120 of the appendix. If you substitute cigar appellants for VAPE appellants, the same conditions are true as to us as they were for the VAPE Association. I want to add... Mr. Rathman, let me ask you a question. As I understand the record, your clients were on notice in March of 2019 that their interest in the FDA's might diverge because the FDA published some draft guidance with regard to prioritizing enforcement with regard to flavored cigars. How does that impact your argument with respect to the District Court's abuse of discretion motion to intervene? Your Honor, the March 2019 guidance is... The March 2019 announcement is irrelevant to our motion to intervene because it does not suggest an adversity of interest between us and the government in the Maryland case. Even as the government was suggesting it was considering tweaking the 2017 guidance, it was vigorously defending its own authority and discretion to decide on deadlines for substantial equivalence reports and pre-market tobacco applications. The government continued to defend the 2017 guidance in the Maryland case with a full throat. I want to add here that the changes that the government was considering for the guidance for flavored cigars were relatively modest in the sense that they can be applied only to some and not all cigar products. And I want to also... Two of my client associations are representing premium cigars alone. They had absolutely no interest whatsoever in what the government might do with respect to flavored cigars. So the March 2019 announcement was an irrelevancy. It had nothing to do with anything. I wanted to add one more point on intervention. We are intervening for purposes of appeal, not to affect the District Court's... Anything that had happened in the District Court. The Marino case and the Smoke case make clear that the time to intervene for purposes of appeal is after a judgment even is fine as long as it's the point at which the government might not appeal. Our intervention motion would have been timely if it was after January of 2020, January 23rd, when the government said for the first time that it was going to pull the rug out from us and stop defending this guidance if the court does not reverse the intervention decision. Counsel, I have a question. Yes. The District Court seemed to rely on not just the timing but also a concern about prejudice to the parties because your intervention motion seemed to suggest that you were going to be arguing about the impact that this case had on your D.C. case, and the court was concerned that that had not been raised, you hadn't filed an amicus brief about that, et cetera, and so that either you couldn't raise it on appeal or the parties would be prejudiced. That was the distinction, as I see it, that the court was drawing between your situation and the vapor intervener's situation. Can you address that? Yes, Your Honor. Our motion made very clear that we were intervening for purposes of appeal only. The District Court suggested that, well, we're making a new argument and that's not going to be accepted on appeal. The smoke case, 252 F. 3rd 468 at 471, is exactly on point. The court there overruled the District Court denial of intervention, and the court said, although the District Court perceived appellants as seeking to inject additional arguments and materials into a very narrow review of agency action that had already proceeded, the legally relevant purpose of their motion, as ours, was simply to enable them to prosecute an appeal, policing the limits upon what appellants may argue on appeal is properly left to the appeals court. And we're not raising any new arguments. We're not. And there's no need for us to make a futile motion. I do need to address the merits very briefly. The opinions below are all about e-cigarettes and not cigars. They're about an epidemic of youth vaping especially. The January 2020 guidance takes e-cigarettes off the table. At this point, this order, these orders, the merits order and the remedial order are about cigars and piped tobacco, and the District Court never said, never held that these were justified, these extraordinary remedies were justified as to cigars and piped tobacco. It's very clear that the court thought it was addressing an epidemic of youth vaping. The court thought it was addressing an absolute abdication, as the court said, of its duty, of FDA's supposed duty to regulate. Neither of those things is true today. The January 2020 guidance has set a deadline for vaping products. The January 2020 guidance says as to cigars and piped tobacco, well, we wouldn't do it for you except we have to, and this is all that's left. I want one more point. The government says it is content now to have the remand without vacature. The government says that it's eager to have their injunction remain in place even if we're allowed to intervene and even if there are changed circumstances. This is remarkable. It's unprecedented. The government cites the Bonner Mall line of cases. Those cases say you don't vacate if the party is seeking relief. If the party is seeking relief from the judgment below, cause the mootness by voluntary action, 513 U.S. 24. We're the party seeking relief from the judgment below, and we haven't caused mootness. We haven't caused changed circumstances. The government is playing games here. I'll stop here. All right. Thank you very much, Mr. Raffman. You've gone over your time as well, but as with preceding counsel, we're going to give you a little rebuttal as well. So now we'll ask Mr. Revesz from the FDA. Did I pronounce your name correctly? Yes, Judge J.D. Yes, it did. May I please report? Go right ahead. For the government, this court can resolve this case by saying that the e-cigarette appeal is moot and the district court did not abuse its discretion in denying the Savar Association's e-cigarette purchase. As the panel observed, this case presents a challenge to the 2017 guidance that has been superseded in relevant part by the agency. Whether that guidance is properly set aside or not, and whether the injunction is properly issued or not, are not questions that matter as to the e-cigarette recommendations, because FDA has announced that it intends, independent of the district court's order, to enforce the law on the timetable set forth in the May 2020 guidance. I have a question. What about the fact, as opposing counsel said, the 2020 guidance was issued, he says, based on informal comment and an informal procedure? Yes, so a couple of points on that. First, the district court's injunction does not require FDA to issue any guidance through notice of comment, rulemaking, or bidding procedure. That's just not in the injunction. The district court observed, in some of its reasoning, that FDA had to go through some form of notice of comment, although the district court also said in a footnote of its remedy order that it did not have to go through formal rulemaking. The new guidance, as the court observed, did receive comments, and FDA thoroughly responded to those comments in the back half of the 2020 guidance, which is in the appendix. Doing so certainly did not violate the injunction, and at the very least, the procedural questions in this case, as Judge Rushing noted, are different than the procedural questions as to the 2017 guidance. The Supreme Court City of Jacksonville case, on which Mr. Gotting relies, states the test at page 53 in footnote 3. It says that the question is whether the new action is, quote, sufficiently altered from the old policy, or whether it instead disadvantages plaintiffs in the same fundamental way. As an initial matter, the plaintiffs in this case challenge the 2017 guidance, but do not appear to have challenged the 2020 guidance, and indeed, there is no challenge to the 2020 guidance in any district court anywhere in the country. The Administrative Procedure Act, of course, requires that challenges to HDF be made in the district court in the first instance. And in any event, the procedural and substantive differences between the guidances take us well outside of City of Jacksonville territory. You know, in that case, the question was whether a racial preference ordinance was constitutional. The city changed its ordinance, but it still gave racial preferences, and the Supreme Court appropriately there said, we're trying to figure out whether the baseline question of racial preferences are constitutional. That stands or falls, you know, the old ordinance and the new ordinance stand or fall on the same footing. That's simply not what's happening here, where the differences are significant. And if I could just make one final point on mootness, even if the e-cigarette organizations could get the 2017 guidance moot, and could get the 2017 guidance vacated, the injunction dissolved, and somehow, even though it hasn't been challenged in this action, the 2020 guidance vacated, as they suggest, that still would not redress their injury, because everyone agrees, even the e-cigarette organizations agree on page 6 of their reply brief, that FDA retains discretion to enforce the law on a case-by-case basis at its choosing. All tobacco products that are deemed- Counsel, let me ask you this question, which was also put to your opposing counsel. Do you understand, particularly for the vapor appellants, that their argument is to remand with regard to the 2017 guidance, or are they also including the 2020 guidance in their request? See, they say in their reply brief that the practical effect of their request would be to have the 2020 guidance struck down. And obviously, we don't think that's appropriate, not just because the 2020 guidance hasn't been challenged, but because the 2020 guidance would not be subject to challenge. There's no plaintiff in this case who's demonstrated any standing to challenge the 2020 guidance, and the 2020 guidance would be lawful in all respects. So, if we were to agree with you that the, with regard to the vapor appellants, that the 2020 guidance has mooted their claim on the 2017 guidance, would we have any cause to go into the merits of the underlying district court order as to those appellants? You would not, Your Honor. Okay. So, maybe now I can move to the intervention question, which is the other threshold question the court identified. The district court simply did not abuse its discretion in holding that the Savar Association's motion to intervene came too late. That motion came six months after FDA's draft guidance, four months after the district court's summary judgment order, three months after FDA's remedial filing that the industry groups wrongly characterized this settlement offer, that the FDA capitulated to plaintiffs, two months after the district court's remedy order, and two months after Congress chose to collaboratively attack the district court order in a parallel proceeding in the District of Columbia. The district court in the District of Columbia there rejected the request, explained that other remedies have been available to plaintiffs for some time, namely seeking relief before the court in AAP this case. The plaintiffs chose not to pursue intervention in AAP from the start because plaintiffs were delayed in raising their concerns before the AAP court due to their conduct way against the extraordinary relief they had requested. And I think it just confirms, the fact that another district court saw it the same way as the district court here only confirms that the district court did not abuse its discretion in denying the motion to intervene. At the absolute minimum, the Savar Association's could have intervened here two months earlier when they chose instead to collaterally attack the judgment. This court explained in the Scarlatti case that that sort of strategic decision to seek relief in a different forum engenders little sympathy and is evidence that the motion to intervene was not timely. And so even if this court is not persuaded by FDA's draft guidance probably six months before they moved to intervene, I think the two-month period in which they were pursuing relief against FDA in a different court rather than seeking to intervene here is dispositive of the intervention question. All right, counsel, you want to move on to the merits? Yeah, so as to the underlying dispute, which again, the court only has to reach the underlying dispute if it holds that the e-cigarette appeal is not moot or if it holds that the Cigar Association should have been permitted to intervene. If it agrees with the government on both of those threshold issues, the government respectfully requests that its appeal be voluntarily dismissed and the court proceed no further. But if the court reaches the underlying dispute, the district court's ruling should be reversed on any of three threshold grounds. All of those grounds are jurisdictional under the court's case law. This court can decide those grounds in any order. I'll start with the Heckler v. Cheney point because that's where the district court most clearly erred and because its analysis of that question affects all of the other issues, including standing. In Heckler v. Cheney, the Supreme Court held that an agency's decision to enforce or not enforce a statute which is administered is presumptively committed to its discretion by law and is not reviewable in the federal courts. That's for both historic and practical reasons. Historically, those decisions have not been subject to review. Practically, they rely on a sort of balancing of policy and resource constraints that agencies rather than courts are better equipped to handle. Of course, that presumption can be overcome. The Heckler court noted that it was overcome by a statutory text that said that the secretary in the Dunlop case shall investigate certain violations and shall file a complaint if it finds that there's probable cause to do so. The district court thought that this was like that case. It pointed to textual evidence in the statute. It recognized this was a textual question. It pointed to text in the statute that it thought constrained FDA's discretion. The district court's statutory holding was wrong. I'll walk the court through both of the textual provisions the district court thought constrained FDA's discretion. First, the district court relied on provisions that require tobacco manufacturers to file premarket application requirements. The Cheney court held that arguments of that sort may be dealt with summarily because provisions that put obligation on regulated parties in no way constrain the agency's discretion at all. That's plainly correct. There's no way to distinguish what the Supreme Court said in Cheney from this case. Those provisions, I think, don't matter at all. The district court also relied on a provision that says that when a premarket application is filed, that FDA shall grant or deny that application within a set period of time. But again, that provision does not constrain FDA's discretion to enforce or not enforce the law against manufacturers that do not file premarket applications. Nothing in the statute says so. It's not a reasonable interpretation of the statutory context to say that a provision designed to make sure that FDA processes applications as soon as possible has any bearing on FDA's decision not to enforce the law against those who do not submit the applications they are required to. And so the district court's statutory holding was therefore incorrect. The district court also relied on this court's holding in Casa de Maryland, which it understood to say that as soon as an agency writes down a general policy, that that is subject to review and that only case-by-case enforcement decisions are unreviewable. That holding is inconsistent with Cheney, in which the FDA administrator in that case issued a letter saying that FDA would not intend to enforce the FDCA against any drugs used in the administration of the death penalty. That was the same sort of categorical announcement as the guidance here. Casa de Maryland rather, this court held, that when an agency rests on a legal decision for its enforcement discretion, that that legal interpretation is reviewable. The government doesn't agree with that approach. It's made that argument to the Supreme Court. But accepting Casa de Maryland as precedent, nothing in that case matters here because the agency did not give any legal basis for its emphasis in enforcement discretion. It did so based solely on the sort of policy and resource concerns that the Cheney court held properly lies with the agency. And finally, on the Cheney point, plaintiffs invoked this footnote in Cheney that says that it's possible that an agency can so consciously and deliberately abdicate its duties that its policy will become reviewable. That certainly is not what's happening here. The agency is enforcing the requirements of the Tobacco Control Act. The agency's thinking has continued to evolve. The agency has always been clear that it retains discretion to enforce the act as necessary. The agency asked the district court to clarify that its injunction allows the agency to enforce the act at any time it chooses. The district court granted that request. And as the new guidance shows, FDA is taking the science seriously and is enforcing the law in the best way that it thinks possible. There simply is no abdication of FDA's statutory duties. Anything else you want to tell us about at this time? I'm happy to move on to the other grounds, although I don't think the court needs to reach them. As to final agency action, I think the arguments largely overlap with the Heckler v. Cheney points. The guidance has no legal consequences because FDA retains authority to enforce the TCA at any time it chooses. With or without the guidance, FDA would have the same amount of authority to enforce the law earlier or later. So there's just no legal consequence of this guidance, and for that reason it's not final agency action subject to judicial review. And I'm happy to talk about standing if the court has any questions, but because I think it makes more sense to resolve this case of Heckler v. Cheney, I'm also happy to just sit down and observe the rest of my time for rebuttal, as the court prefers. I'll ask the panel if there are any further questions from the panel. No. All right. Thank you very much, Mr. Ruvez. We'll hear from you on rebuttal. All right, Mr. Dubner, you're the clean-up. Thank you, Your Honor. May it please the court. Sorry, I didn't mean to talk over you there, Your Honor. No, go right ahead. May it please the court. Jeffrey Dubner for Plaintiffs' Appellees. To start with mootness, Plaintiffs Below challenged a single agency action, the 2017 guidance. That's the only agency action that the district court evaluated, and that action has now been superseded, at least as to the cigarette appellants. The FDA has made clear that there's no world in which it would put that guidance back in place, and thus there's no effectual relief that the court can give to plaintiffs or industry appellants, which is the test, and required the cigarette appellants' appeal to be dismissed as moot. The e-cigarette appellants, beginning in their reply brief, have been pointing to the doctrine of voluntary cessation to argue that the government's decision to issue a new guidance on the same subject somehow preserves the case and allows them to continue prosecuting their appeal, notwithstanding the government's abandonment of the action that was challenged and passed on below. That's simply not the office of the voluntary cessation doctrine. That doctrine has no application here, and even if it did, it would still point towards mootness. As this court explained in Porter v. Clark, 852 F3rd 358, the purpose of the voluntary cessation doctrine is to prevent the manipulative litigant from immunizing itself from suit by temporarily changing its action to avoid a dismissal. That's not remotely what is in play here. This is a case where the government lost before the district court and then made changes that were of no purpose to the appellate court reviewing what the district court did and what that original now superseded action was. We found no cases that suggested the voluntary cessation doctrine has any application in that sort of context, and to the contrary, the only one that we found where an appellate made this sort of argument, which is directly on point, is Martinez v. Wilson, 32 F3rd 1415, from the Ninth Circuit, in which the intervener defendants made the exact same argument here, that a district court injunction was moot, notwithstanding the fact that the defendant had made clear it wouldn't resume the challenged action, and the court denied that argument. Rather than the voluntary cessation doctrine that they're now pointing to, Center for Science in the Public Interest v. Regan from the D.C. Circuit and Valero from this court, as we explained in our brief, are directly on point and make clear that the proper course of action in a case such as this is to dismiss the appeal as moot, and in particular, Center for Science in the Public Interest dealt with the same sort of context where interveners were saying, hey, we have arguments against the new rule that has superseded the one the plaintiffs challenged, and the D.C. Circuit said, that's all well and good, but that's another case. And that's the proper course of action here. There's been no challenge to the 2020 guidance filed in the District of Maryland or any other court, and therefore, this court has no jurisdiction to pass on its legality. The Congress has not provided original jurisdiction to the courts of appeals over a challenge such as this, and therefore, the case must be brought in the district court in the first instance. And as Judge Agee asked, as far as we're aware, no case has been brought challenging the 2020 guidance. It's quite striking. The first challenge by tobacco manufacturers against the deeming rule was brought the same day that the deeming rule was issued. We're about 10 weeks out from the 2020 guidance. By 10 weeks after the deeming rule, there were nine cases on file, including cases by both the vapor associations here and the cigar associations. And I think that reflects the fact that there really— there may not be any sort of credible challenge to the 2020 guidance. As counsel from the government said, that guidance is not before this court, so there's no need to get deeply into, you know, its merits vel non. But the only argument that the e-cigarette associations have even inverted to against it is that it required notice and comment and somehow was issued without it. Assuming for the moment that those arguments are relevant in some way, they have no merit whatsoever. The 2020 guidance was issued with notice and comment. The FDA engaged in a 60-day notice and comment period that it began before the district court's order. It then extended that at the request of some of the appellants here and ultimately received 15,000 comments, which it commented on and discussed at length in the resulting guidance, which is all in the record. Counsel for the e-cigarette appellants referred vaguely to Rule 553B and said that this is informal notice and comment rulemaking in some way and not formal notice and comment rulemaking. I don't know what that is trying to say. The standard requirements of 553B are that a notice be placed in the federal register, which was the case here. I'm sorry that I don't have that citation at my fingertips. But notices were placed in the federal register both in March 2019 and when the guidance issued. Under 553B-1, that notice must give a statement of the time, place, and nature of the rulemaking proceedings. It did exactly that. It said what the nature was. It gave a time for comments and a place to submit them. It must have a reference to the legal authority under which the rule was proposed. It did that, citing the Tobacco Control Act. And it must give either the terms or substance of the proposed rule or a description of the subjects and issues involved. And it did exactly that. And so this sort of vague assertion that there's some 553B problem is completely specious and may be why no challenges have been brought in any district court. That's before we even get to the question of whether notice and comment was required for the 2020 guidance, which I'm happy to get into if the court has questions about it. If not, I'm happy to discuss any other aspects of mootness or move on to intervention. Why don't you move on to the intervention question? Sure. So to turn to intervention, the cigar associations raised one argument based on one interest below. That was the argument that vacature of the guidance somehow conflicted with the case management orders in a case they had brought in the District of Columbia. That's the only argument that they raised. That's the only argument that Judge Grimm passed on. They don't dispute that on that argument, Judge Grimm was correct or even that he abused his discretion. And that's really the end of the issue here. They cite Oklahoma ex-rel Edmondson, a Tenth Circuit case. And what Edmondson said was that an appellate court looking at a motion to intervene in a district court looks at what was said in the complaint and intervention and whether the interests raised when the proposed intervener moved for intervention are the interests that its intervention motion lives or dies on. And here, those interests were ones that had been obvious to the cigar associations since at least August of 2018, more than a year before they filed their motion, and which at no point did the government ever seek to advance. As early as August 2016, 2018, in a status conference before Judge Mehta in DDC, which we cite in our brief, the cigar appellants complained that the DOJ was not moving to transfer our case to the District of Columbia. They said nothing about that to Judge Grimm. Then they filed an amicus brief in which they said that the government had raised all of the legal reasons against our motion. They, again, said nothing whatsoever, and the government had said nothing whatsoever about any proposed conflict with their case. They then said nothing to either this court or Judge Mehta in DDC when the government announced in 2018 and then issued a draft guidance in March 2019 that said that it was planning on revoking large parts of the guidance, which would cover about 50% of the cigar market, while counsel for cigar appellants said that some of his clients don't sell flavored cigars. One of them most certainly, its members most certainly do, but more to the point, none of their arguments at any point in this case have ever suggested the court should take action only as to unflavored cigars or only as to premium cigars. They are seeking relief across the board, including those flavored cigars that the government had made very clear it wasn't planning on continuing the 2017 guidance. Counsel for the cigar appellants said here that the March 2019 guidance gave no indication that the agency wasn't going to continue to defend the 2017 guidance, but the interest that the cigar associations advance here, their objective was not simply to preserve the 2017 guidance. It was to preserve the 2017 guidance until Judge Mader ruled on their claim. And that ultimate objective, the government quite clearly did not share at least as early as March 2019 when it made clear that as soon as possible, it planned to issue a new guidance that would undo that. And then, of course, we reach May 2019, where Judge Grimm explicitly asks if there are any reasons, any prudential reasons that it should alter the vacature of the guidance which it had just issued. And here again, the cigar associations were completely silent. Instead, they chose, as counsel for the government said, to make a collateral attack in another court. It's unclear how it could be that it was timely for them to make a challenge there that was clear at that point that their interests had diverged such that they needed to seek this extraordinary relief in a coordinate court trying to hold that Judge Grimm's opinion didn't apply to them, but it wasn't yet right for them to raise any issue before Judge Grimm. And so, you know, I think it's quite clear that their argument was entirely untimely. And in terms of prejudice, as Judge Rushing observed, that is a key factor here. As the court held in the EPA, counsel for cigar appellants said today that they don't raise any new arguments. That's simply incorrect. No party at any point below, or amicus for that matter, ever suggested that the 2017 guidance might be upheld as to e-cigarettes but struck down as—or upheld as to cigars but struck down as to e-cigarettes or vice versa. That's exactly the argument that the cigar appellants are arguing here. So there are certainly new arguments that not only have we had to contend with, but this court would have to resolve without the benefit of the district court's consideration if it were to in some way construe the motion before the district court on one ground as a motion before this court on completely different grounds as counsel for the cigar appellants are requesting. I'm happy to discuss further on the intervention issue if the court would like, or I can move on to any of the substantive issues that the court has questions on. Well, why don't you move on and tell us what you want to with respect to the merits of the district court's underlying order. Sure thing. So to begin with reviewability, as that's where the government focused its attention, this was—the 2017 guidance was a categorical industry-wide exemption from an explicit statutory mandate. As Judge Graham explained, it simply was not an act of enforcement discretion. The government relies heavily on Cheney and the D.C. Circuit case of Jerome Stevens. Those were both cases in which plaintiffs were seeking to force the government to undertake specific enforcement actions. In Cheney, to undertake specific enforcement actions against specific drugs that were being used in lethal injection for these specific plaintiffs. In Jerome Stevens, from the manufacture of a drug called levothyroxine sodium against manufacturers who FDA had allowed to manufacture and sell the exact same drug. Neither of them involved this kind of general statement that there would be no enforcement against anybody and, crucially, that the manufacturers could therefore bring their products to market and continue to market them without seeking or receiving a marketing order, which is in direct contravention of the Tax Control Act. Let me ask you a question. My understanding of the Jerome Stevens pharmaceuticals case was that there was a deadline extension for some number of years that arguably is as broad as what happened in this particular case with respect to the tobacco products. Why don't you go back to that case and distinguish it a little bit further? Yes, Your Honor. So, in Jerome Stevens, as I said, first of all, it really was a single drug, levothyroxine sodium, I believe, a kidney treatment. And the court had said that the three-year permission to market while Jerome Stevens' application was being reviewed for other manufacturers would continue for three years. Now, it did give a period of years, but that's quite distinct in two very significant ways. The first is, of course, that it was about one specific drug. It happened to be made by multiple manufacturers, but it was one chemical compound. The second, and perhaps even more significant, is that that was a three-year time-limited exception. The policy here, 2017 guidance, not just gave a four-year grace period and freedom from any potential prosecution or liability for cigars and five years for e-cigarettes. It then created an indefinite grace period and immunity from the law thereafter. Unlike the deeming rule, the 2017 guidance said any manufacturer that submits an application is then free to market without receiving a marketing order, notwithstanding 387E and 387J, indefinitely, unless and until FDA takes action and denies their application, which also contradicts the portion of 387J that requires the FDA to act within 180 days. But so that indefinite exemption is a suspension from the law that is nowhere to be found in Jerome Stevens or Cheney or any other case that has found enforcement discretion to the nature of the challenged agency action. What's much more on point is Public Citizen v. Acosta, which no party has suggested is inaccurate on the law, but only stated it doesn't accurately describe what the 2017 guidance was. Public Citizen v. Acosta found that an agency action that says, indefinitely, you do not need to comply with this law, you do not need to file the applications that the, in that case, a regulation, in this case, a statute requires, and you can continue to go about your business without having to worry about facing any sanctions indefinitely going forward, that that is not an enforcement policy. It's simply an exemption from the law that suspends a previous rule. And that's exactly what this did to the deeming rule. Counsel, tell us why you think that the 2017 enforcement and guidance was a final agency decision. Yes, Your Honor. So under Bennett v. Speer, the question is, of course, whether the action was tentative or rather the culmination of an agency decision-making, and whether it affected any party's legal rights or obligations. As to the first factor, there's no question that this was FDA's final statement until it possibly would have reconsidered at a later date, which, of course, ultimately it did. But the case law is clear that the possibility that an agency may one day change its mind does not render something non-final. The closer question, yes, Your Honor. Counsel, one more argument. As I recollect what the enforcement guidance said, it made several disclaimers that this accorded no party any legal rights and that the FDA, this was simply current thinking and that they could If that's a correct recollection, how does that make the enforcement guidance final? So as a preliminary matter, and Your Honor is correct, the first page of the guidance did contain boilerplate disclaimers that it creates no legal rights. However, much of that language, first of all, did not apply to what the guidance actually did, and second of all, the guidance contained other language that were definitive in a way that courts have said overcomes that kind of boilerplate language. Of course the government can't shield a legislative rule, a final agency action that alters rights by simply claiming, including a disclaimer that says this is not a legislative rule or a final agency action. Here, for example, some of the language that you referred to says the use of the word should in agency guidances means that something is suggested or recommended but not required. The word should never appears in the 2017 guidance. To the contrary, it says that this is something that industry can follow. It says on page 141 of the appendix, you can use an alternative approach if it satisfies the requirements of the applicable statutes and regulations, making clear that the approach and the guidance is one that they can use. Similarly on page 143, it says FDA is providing a further extension. There will be a continued compliance period. It was making clear that what it said in the guidance was the case until if they decided to change it in the future. It's also critical to note that the compliance period, so-called compliance period, said it was continuing, was described in the deeming rule, 81 Fed Reg at 29010. Manufacturers will continue to market their products without authorization. The FDA was being quite clear that manufacturers could continue to market their products without FDA authorization. I think the 2020 guidance is an illustrative contrast here. Whatever its merits as policy, the guidance is a statement of enforcement priorities over and over again. It says our priorities for enforcement going forward will be this. This is our highest priority. This is our lowest priority. It also includes language such as at page 190 of the appendix. This guidance does not in any way alter the fact that it is illegal to market any new tobacco product without pre-market authorization. Similarly, it says- Counsel? Yes, Your Honor. You might want to kind of move on in terms of time to kind of wrap up with any conclusive remarks that you may have. Thank you. We haven't addressed standing or the remedy at all. I'm happy to address that if the Court has any questions. If not, I know my time has expired. We're happy to rest on our papers. All right. Thank you very much. Thank you, Your Honor. I would ask our clerk, Mr. Coleman, to accord Mr. Gotting and Mr. Raffman two minutes apiece on rebuttal. And for Mr. Rivez, he's got his own time on rebuttal. So, Mr. Gotting, if you'd like to tell us what you have on your mind. It was not in the 2020 guidance. That was a guidance. It wasn't a formal rulemaking. If we were to sue in the 2020 guidance, FDA would say, we have no standing because it was just informal guidance, the exact same argument they are making in this case. We would get no judicial review, which is the whole point of 553. Second, voluntary cessation. There are many alternatives or exceptions to the mootness argument. And we argued another one, which is northeastern and green. There's no evidence in those cases that those agencies or those cities were trying to just moot a case. They were trying to solve the problem. The problem was they didn't solve the problem. And so the original challenge stood, and that is the case here. Third, plaintiffs say that 2020 guidance is based on new reasoning. That doesn't matter. We're not challenging the reasoning in the 2020 guidance, and this court does not need to bother itself with that. We are challenging the procedural error that both Judge Grimm and FDA committed, and so we are asking for that to be remanded. A few more points. FDA argued that Judge Grimm said it was adequate to do this informal notice and comment through guidance, not a formal rulemaking. That is what we are challenging here. We are saying that Judge Grimm got it wrong, and he can't have it both ways. He can't have a legislative rule on the one hand for 2017 and then for his date have an informal, non-substantive rulemaking. FDA says it might not do a rulemaking on remand. We don't need to show that. This is the Sugar King case. We only need to show that there was a procedural error that can be fixed. It is up to FDA whether or not to do that, but we don't have to show what happens on remand. And finally, the 2022 guidance is the same. It's the same date. That is no coincidence. Thank you. All right. Thank you, Mr. Gotti. Mr. Raffman? Thank you. Am I in the right spot? A little to your left. Yeah, you're good. All right. Appreciate it. With respect to the argument about what we told the district court, I want to invite the panel to look at ECF number 152. This is our reply brief on September 30th of 2019, where we made very clear that we were intervening for purposes of appeal only, and that the reason we had refrained from intervening until that point was that the government was adequately supporting. What page in your reply brief? I'm sorry. It's page three. I'm sorry. Excuse me. ECF 152 is the brief in the district court, and it's point number four at page two. It's not in the joint appendix, but it's in the record, in the district court record. We've heard today about things we were supposed to have said to the district court, and I think it's important that the panel get a look at what we said to the district court about intervention in that reply brief, given what's been said today. It's been said today that we were playing games in the District of Columbia when we should have been in Maryland. And the fact of the matter is, we thought the government was going to support us in the District of Columbia based on discussions we had with them. We were surprised when they didn't. But regardless, the government was adequately representing us, adequately representing our interests in Maryland the whole time. There was no adversity of interest, no collusion with the plaintiffs, no nonfeasance. That is what Stewart versus Huff teaches we must show, and there was no chance that we could show it. We said intervene for purposes of appeal also at 747 in the joint appendix, page four. Our ultimate objective was to preserve the guidance at all times. On flavored cigars, the January 2020 guidance, even now, doesn't say they would do this independently. They're saying that it's compelled by the district court's order. If they want to regulate flavored cigars, they ought to do it on their own instead of hiding under the skirts of the district court's order. Flavored cigars are not 50% of the market, and two of our associations don't make those cigars. And our associations, those two associations are the ones who are going to bear the great burden of this order because they make the largest number of stock-keeping units. They're FDA's lowest priority, and yet they're the ones who are going to have to spend millions of dollars for the May 2020 deadline that the agency doesn't even think is appropriate for those cigars. Last point, if this case is moot as to vapors, as Mr. Dubner suggests, the court should vacate the injunction because it's mootest to them so that it doesn't have an effect on other parties, given that the government is asking the court to allow it to hide behind the injunction. That's all I have. Thank you, Your Honor. All right. Thank you, Mr. Raffman. And Mr. Rivez, you get the final word. Starting on mootness. First, I think I understood counsel to say that there would be no judicial review of the 2020 guidance. Certainly we think that's correct, but if true that only underscores that this court should not do anything that would have the effect of vacating the 2020 guidance if it is not properly subject to judicial review. I also understood the Vaping Association's counsel to say that Judge Grimm got it wrong on the notice and comment issue. That's very surprising to me because I thought the entire theory of the e-Cigarette Organization's case was that Judge Grimm got it right, and that what should be true for the 2017 guidance should also be true for the 2020 guidance. We, of course, don't agree either that Judge Grimm got it right or the 2020 guidance and the 2017 guidance followed the same procedures, which plainly they did not. But regardless, it's not tenable to argue that the 2017 guidance is lawful, but that the 2020 guidance is unlawful, and that they're so similar that what's good for one is good for the other. So I think that all just confirms that the e-cigarette appeal here is moot. If I could just move to Heckler v. Cheney, unless the board has any questions before I get there, I just want to make a few quick points. First, the 2017 guidance does not exempt all products. It exempts only those products on the market as of August 8, 2016, the date of the deeming rule. So products that are brought to market later are not affected by the guidance. You know, the Jerome Stevens case, as Judge Agee pointed out, was as to an entire class of drugs, an entire class of drug manufacturers that manufactured a specific type of drug. It's hard for me to understand how Cheney would be different as to that category versus the category of deemed products on the market as of August 8, 2016. And certainly, I'm not aware of any case that draws that distinction. Counsel for the plaintiffs also suggested that the compliance period would be indefinite because FDA might never act on the applications. That's contrary to statute. 21 U.S.C. Section 387J, Subsection C, requires FDA to grant or deny premarket applications within 180 days. So the fact that FDA's guidance suggests that it would allow products to remain on the market during that 180-day review period, something that the district court's injunction also does, the district court's injunction also gives manufacturers a year, actually more than 180 days, after when they submit for FDA to process those applications, certainly does not make this an indefinite extension of the deadlines, as plaintiffs suggest. And finally, just a word on the public citizen versus Acosta case from DDC. Even assuming that case is correct, the theory of that case was that the department was not only saying it would not enforce the law, but it also said we will not accept the form that the law requires. In so doing, the district court there held and effectively amended the law by saying that it would not do something that the statute required it to do. Again, there's no plausible claim that anything FDA is doing here is in conflict with the statute. And then finally, just a word on final agency action. I agree with plaintiffs' counsel that the question here is whether the guidance affected the legal rights or obligations of any party. On appendix page 141, the guidance says that it does not establish legally enforceable responsibilities. Of course, if that were incorrect, that wouldn't save the guidance, but that is correct because it is the Tobacco Control Act and the Deeming Rule that places the legal obligations on tobacco manufacturers. Nothing in the guidance alters that. The guidance reserves FDA's ability to enforce the law at any time. It's therefore distinguishable from the Hawks case, in which they rely on their brief, where the agency action there precluded the agency from enforcing the law for a five-year period and was therefore found by the Supreme Court to be binding on the agency. Nothing in this guidance precludes the agency from exercising its enforcement discretion as it thinks appropriate. The fact that manufacturers' legal obligations would be the same with or without the challenged guidance emphasizes that it has no legal consequences. I'm happy to answer any of the panel's questions. Otherwise, I think it's appropriate for me to say that we're all very grateful to the court staff for everything they did to make this argument happen, and that if there are no further questions, I ask that the e-cigarette appeal be dismissed as moot, the district court's order denying the Cigar Association's position to be affirmed, or in the alternative, the judgment of the district court be reversed. Thank you. Thank you very much. To all counsel, we appreciate your diligence and patience in trying to put the argument together. We understand that there's some time sensitivity here, so the court will endeavor to act promptly so that we can get you a decision and the parties can move on from there. As most of you know, it's our tradition in the Fourth Circuit to come down from the bench and greet counsel. That's not something we can do today, so if you'll just consider this your audio video greeting from the court and we hope you all will stay healthy, wash your hands, and we hope to see you in person when things return to normal. So with that, I will ask the clerk to adjourn court, but also ask the panel to remain on the monitor so we can chat for a bit. Thank you very much. Thank you. Thank you. Thank you, Your Honor. This honorable court stands adjourned, God save the United States and this honorable court.
judges: G. Steven Agee, Stephanie D. Thacker, Allison J. Rushing